Hitchcock, J.
Two questions are raised for the consideration of the court in this case.
1. Whether the protest was properly admitted in evidence.
2. Whether, under the circumstances of the case, the plaintiff is entitled to six per cent, damages.
*These two questions are intimately connected, and the [183 decision of one must operate, in a great measure, to decide the *184 other. If the protest was competent evidence, it is because the bill is considered as a foreign bill, and, if a foreign bill, then the plaintiff is entitled, under our statute, to the damages claimed. This statute makes a distinction between bills drawn upon persons residing without the jurisdiction of this state, but within the jurisdiction of the United States, and those drawn upon persons without the jurisdiction of the United States. It#is as follows: “When any bill of exchange shall be drawn for the payment of any sum of money, and such bill shall be legally protested for nonpayment or non-acceptance, the drawer or drawers, indorser or indorsers, shall be subject to the payment of twelve per cent, damages thereon, if drawn on any person or persons, or body corporate, without the jurisdiction of the United States; and six per cent, damages thereon if drawn on any person or persons, or body corporate, within the jurisdiction of the United States, and without the jurisdiction of this state.” In either case a protest is necessary to entitle the holder to the damages specified. This statute, it is true, does not, in terms, determine the character of a bill, but, it may, in connection with the general principles of law, aid us in fixing that character.
Bills are either foreign or inland. As it respects foreign bills, there is no controversy but that a protest is competent evidence of a demand. Indeed, it seems to be the only proper evidence. Such bills, if not accepted, or if not paid, must be protested in order to charge the drawer or an indorser. It is equally well settled that in the case of an inland bill no protest is necessary; and, not being necessary, the protest, if one be made, can, not be given in evidence, but the notary himself must be called as a witness. If not protested, the appropriate demand may be proven by any disinterested witness. 3 Kent’s Com. 93, 2 ed.; Rogers v. Stevens, 2 Term, 713; Leftley v. Mills, 4 Term, 170; Union Bank v. Hyde, 6 Wheat. 572; Townsley v. Sumrall, 2 Pet. 170.
The bill, which is now the subject matter of controversy, 184] *when drawn, was clearly an inland bill, and, if it must be so considered as between the present parties to the record, the coui't unquestionably erred in receiving the protest in evidence. This leads us to inquire into the operation and effect of the indorsement by the defendants to the plaintiff, which-was made in the State of Ohio, previous to the time the bill fell due. In settling this question, it may be as well at once to refer to au *185 thorities. In the case of Slocum v. Pomeroy, 6 Cranch, 221, it is said by the court, in speaking of the indorsement of the bill, “that the indorsement is understood to be not simply the transfer of the paper, but a new and substantive contract.!’ In the case of Aymar v. Sheldon, 10 Wend. 439, the Supreme Court of New York say, “No principle seems more fully settled, or better understood in commercial law, than that the contract of the indorser is a new and independent contract, and that the extent of his obligation is determined by it. The transfer by indorsement is equivalent in effect to the drawing of a bill, the indorser being, in almost every respect, as a new drawer.” And, it is added, “ on this ground the rate of damages in an action against the indorser, is governed by the law of the place where the indorsement is made, being regulated by the lex loci contractus.” In the case of Ballingalls v. Gloster, 3 East, 481, Lord Ellenborough says, “ There is no distinguishing the case of an indorsor from that of the drawer, it having been long ago decided that every indorser is in the nature of a new drawer. Every indorsement is a new bill, and the indorser stands as to his indorsee in the law merchant the same as the drawer.” In the case of Heylin v. Adamson, 2 Burr. 674, Lord Mansfield said, when a bill of exchange is indorsed, “ as between the indorser and indorsee, it is a new bill of exchange, and the indorser stands in the place of the drawer.” Justice Story, in his treatise upon the Conflict of Laws, 261, says, “ Suppose a negotiable bill of exchange is drawn in Massachusetts on England, and is indorsed in New York, and again by the first indorsee in Pennsylvania, and by the second in Maryland, and the bill is dishonored; what damages will the holder be entitled to? The law as to damages *in those states is different'; what [185 rule, then, is to govern? The answer is, that in each case, the lex loci contractus. The drawer is liable, according to the law of the place where the bill was drawn; and the successive indorsers according to the law of the place of their indorsement, every indorsement being treated as a new and substantive contract. The consequence is, that the indorser may render himself liable, upon a dishonor of the bill, for a much higher rate of damages than he can recover from the drawer. But this results from his own voluntary contract; and hot from any collision arising from the nature of the original contract.” Without citing further authorities, these are sufficient to show that every indorsement is a new and substantive contract,. *186 and must be governed by the law of the state where made. When, therefore, this bill was indorsed by the defendant, he became as a new drawer to the plaintiff, and, as between them, it is the same as would have been a bill drawn by the defendant upon a person . “ within the jurisdiction of the United States and without the jurisdiction of this state.”
The next question arising is, whether the bill so drawn is a foreign bill.
Upon this point, the decisions of the courts in the different states have not been uniform, and some of these decisions are at variance with the decisions of the Supreme Court of the United States. In the case of Miller v. Hachley, 5 Johns. 375, it was held by the Supreme Court of New York, that a bill drawn in that state on Charleston, or any place in the United States, is an inland bill, on which a protest for non-payment or non-accoptance is not necessary. Upon the authority of this case the same prin. ciple was decided in the case of Robinson v. Johnson, 1 Mo. 434. In this latter case, however, it was holden that the bill must be protested in order to entitle the holder to statutory damages, and that this must be proven on the trial. In South Carolina and Pennsylvania, such bills are considered in the light of foreign bills, requiring protest. In the case of the Phenix Bank v. Hassoy, 12 Pick. 433, it was decided, “ that a bill of exchange, drawn 186] *by a person residing in one of the United States, upon a person residing in another, is a foreign bill.” In the case of Townsley v. Sumrall, 2 Pet. 170, this question was agitated, but does not seem to have been definitely settled. Justice Story, in giving the opinion of the court, at page 178, says, 11 We do not think it necessary in this case to decide whether a bill drawn in one state upon persons residing in another state within the Union, is to be deemed a foreign or inland bill of exchange. Foreign it ■certainly is not, if by such appellation is understood a bill drawn upon a country under a totally distinct and independent sovereignty and allegiance. Inland it is not, if by that appellation is understood a bill drawn in one part of the territory, on another part, exclusively under the same municipal laws, and exclusively governed by the samo sovereign power. It would seem to constitute an intermediate case.” At page 180, he adds, “ It is not disputed, that by the general custom of merchants in the United ■States, bills of exchange drawn in one state on another state, are, *187 if dishonored, protested by a notary, and the production of such protest is the customary document of the dishonor. It is a practice founded in general convenience, and has been adopted for the same reasons which .apply to foreign bills, in the strictest sense. The distance between some of these states, and the difficulty of obtaining other evidence, is far greater than between England and France, or between the continental nations of Europe, where the general rule prevails. We think, upon this ground alone the reason for admitting foreign protests would apply to eases like the present, and furnish a just analogy to govern it.” The same question was again piresented to the Supreme Court of the United States, in the case of Buckner v. Finley, 2 Pet. 586, and, after full argument, it was decided, that bills of exchange, drawn in one state of the Union on persons living in another state, partake of the character of foreign bills, and ought to be so treated in the courts of the United States. From all these cases there can be no question that the weight of authority in the United States is, that a bill thus drawn is to be considered a foreign bill, at [187 least thus far, that a protest is good evidence of the facts it contain.
In the determination of this question, it is proper that wo take into consideration our own statute upon the subject. This statute, it will be seen, makes a difference between bills drawn on persons residing without the state, but within the United States, and those residing without the United States. In the former case the holder is entitled to six per cent, damages over and above the principal and interest of the bill;.in the latter he is entitled to twelve percent. But in either case, in order to lay the foundation for these damages, it seems to bo necessary that there should be a protest. At least no provision is made for damages, unless “such bill shall be legally protested for non-acceptance or non-payment.” Before these damages are recovered, then, this protest must be proven, and how shall it be proven except by the notarial seal? It is admitted by counsel, that for the purpose of recovering the statutory damages, it is competent evidence, but it is insisted that it furnishes no competent evidence of demand, and such seems to have been the opinion of the court in.the case cited from Missouri. But we entertain the opinion that the legislature, in making the protest necessary, intended to give it the same effect, as, by the custom of merchants, is given to protest of foreign bills of exchange. Upon the whole, whether we adopt the principles settled by the author *188 ities cited, or depend alone upon the construction of our statute, we believe the protest in the case under consideration was properly received in evidence.
We might perhaps, with propriety stop hero, but there is another question growing out of the statute which we have considered, and upon which we all concur in opinion. It is this : Is a protest necessary in every case of non-acceptance or non-payment of a bill of exchange, drawn in this state upon a person residing in another state of the Union, in order to entitle the holder to recover against the drawer or indorser? If such bill be, strictly speaking, foreign, a protest would be necessary. But the statute, 188] discriminating as it does between *bills drawn on persons without and within the United States, it is believed the legislature intended that the former should be considered as foreign bills, but that as to the latter it was left to the option of the holder, to treat them as foreign by procuring them to be protested, or as inland by making demand and giving notice of the dishonor, in the same manner as if drawn upon a person residing within the state. If, then, a bill is drawn in this state on a person resident in another state, the drawer or indorser will be charged, upon proof of demand in due time made upon the drawer or acceptor, and notice. This ])roof may be made by the introduction of the protest, if the bill has been protested, and in such case the holder will be entitled to the six per cent, damages. Or it may be made by the introduction of any other evidence which conduces to prove the fact. But if there has been no protest, the holder can recover no damages beyond the principal and interest of the bill.
The motion for a new trial will be overruled, and the plaintiff may take judgment for the principal and interest of the bill, with six per cent, damages and the costs of the protest, together with costs of suit.
Motion overruled.