Mr. Justice Clayton
delivered the opinion of the court.
This suit is founded upon a bill of exchange drawn by the defendant Harris, on the 16th of July 1846, in favor of Batte & Huntingdon, payable five months after date, addressed to the plaintiffs in New Orleans, and indorsed by Batte & Huntingdon to them.
Upon the trial, Huntingdon, one of the firm of Batte & Hun-tingdon, was introduced as a witness, and not objected to. He testified, “ that the bill of exchange was given without consideration, and was never in fact negotiated, but was deposited with the plaintiffs until Batte & Huntingdon could pay their account to the plaintiffs. He farther stated that he could not say what amount, if any, was advanced at the time to Batte & Hun-tingdon, as he had not access to their 'books.” To this deposition a receipt of Fellows, Johnson <fe Co., bearing date 25th July, 1846, was attached, in which this bill of exchange was embraced, and which recited that they had been taken for collection. Two of the clerks of the plaintiffs proved that the bill was placed in their possession as collateral security, for the indebtedness of' Batte & Huntingdon.
Upon the trial, the plaintiffs offered the books of Batte & Hun-tingdon to prove, that when they took the bill, and afterwards, they made advances to Batte & Huntingdon upon the faith of it. This testimony was rejected, and an exception filed to its rejection.
*466 The court refused three charges which were asked by the plaintiffs, and at the instance of the defendant instructed the jury, “that if they believe, from the evidence, that the defendant executed the draft read in evidence, without any consideration and as a mere accommodation for Batte & Huntingdon; and if they further believe, from the evidence, that said draft passed into the hands of the plaintiffs without any consideration, and for the mere purpose of collection, or as collateral security for a debt due them by Batte & Huntingdon ; then the law is for the defendant.” The verdict was for the defendant, and judgment rendered accordingly.
There is no point of commercial law, upon which the cases are in more direct and irreconcilable conflict, than on this. The New York cases support the doctrine laid down in this charge. Coddington v. Bay, 20 Johns. R. 637; Stalker v. McDonald, 6 Hill, 93. This latter case examines the rules at much length, and adopts the conclusion, that an innocent holder of negotiable paper will not be protected, where the paper was received as security for an antecedent debt, due from the person who made the transfer, and the holder neither parted with value on the credit of it, nor relinquished any previous security. The court in Tennessee has held the same doctrine. Wormley v. Lowry, 1 Humph. 468; Ingham v. Vaden, 3 Ib. 55.
The supreme court of the United States holds the direct converse of this proposition. Townsley v. Sumrall, 2 Pet. 170; Swift v. Tyson, 16 Ib. 1. In the last case the court said, “We have no hesitation in saying, that a pre-existing debt does constitute a valuable consideration in the sense of the commercial law, as applicable to negotiable instruments.” — “ Receiving such instrument in payment of, or as security for a pre-existing debt, is according to the known usual course of trade and business. And why, upon principle, should not a pre-existing debt be deemed such a valuable consideration ? It is for the benefit of the commercial world, to give as wide an' extent as practicable to the credit and circulation of negotiable paper, that it may pass not only as security for new purchases and advances, made upon the transfer thereof, but also in payment of and as security
*467 for pre-existing debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear from taking any legal steps to enforce his rights. The debtor, also, has the advantage of making his negotiable securities of equivalent value to cash. But establish the opposite conclusion, that negotiable paper cannot be applied in payment of, or as security for pre-existing debts, without letting in all the equities between the original and antecedent parties, and the value and circulation of such securities must be essentially diminished, and the debtor driven to the embarrassment of making a sale thereof, often at a ruinous discount, to some third person, and then by circuity to apply the proceeds to the payment of his debts.”
This reasoning has our entire assent. The circulation of negotiable paper should be subjected to as few fetters as possible. An accommodation drawer or indorser is sometimes regarded as a surety. If the defendant had agreed to become bound as surety for the debt of the plaintiffs, had signed an obligation for the purpose, and indulgence had been thereupon granted to the debtors, his liabilities could not be a matter of doubt. Chitty on Cont. 30; Chitty on Bills, 83.
The case of Brush v. Scribner, 11 Conn. R. 388, examines this doctrine with much care, and sustains the conclusion arrived at in Swift v. Tyson.
The English cases are not so clear and explicit on the subject as could be desired. ■ Chitty, however, in his summary of the doctrine, after a review of the cases, says, “If a bill or note be indorsed as a collateral security, that is an adequate consideration to enable the party to sue thereon, though he advance no new credit on the bill or note,” Bills, 85.
We think, under the circumstances of this case, that forbearance of suit is a sufficient consideration for the indorsement. The charge of the court below was directly opposed to this conclusion.
The evidence offered and rejected was improperly excluded. Possession of the instrument vested the holders with prima facie right of property. It was attempted to rebut this presumption *468 by the testimony of Huntingdon. He was not positive whether value was received by Batte & Huntingdon, either at the time of the indorsement or afterwards, and said he could not speak with certainty without access to his books. These books thus became necessary to determine to what weight his evidence was entitled. The books were oifered by the plaintiffs, and in connection with this deposition-were legitimate evidence for them, however it might be if offered by the defendant. He is bound by their acts, in regard to this bill, because he had intrusted .them with it. He had trusted Batte & Huntingdon with it, and any evidence which showed they had received value for it was competent, after he had endeavored to show that the plaintiffs were holders without value, and without good faith. The receipt attached to Huntingdon’s deposition might make it necessary to show that the bill was not taken merely for collection, but for money advanced, or as collateral security, and that indulgence was granted upon the faith of it, to the original debtors, until the bill matured.
To prevent any misapprehension, we will .remark that this bill was drawn in this state, but payable in New Orleans, so that the decision rests not upon our state legislation, but upon the general principles of the commercial law.
For the error of the court, as well in its charge, as in the exclusion of'the testimony, the judgment is reversed, and new trial awarded.
Judgment reversed, and new trial awarded.