IN THE

# SUPREME COURT of JUDICATURE

OF THE

# STATE OF NEW JERSEY.

### AT JUNE TERM, 1859.

---

## LEVI HETFIELD, ISRAEL CODDINGTON, AND JOHN HERBERT *vs.* E. DEAN DOW.

1. If a party to whom goods are delivered become personally liable, either by express or implied contract to pay for them, the engagement of any other person, though made at the same time and upon the same consideration, is a promise to pay the debt of a third person, within the meaning of the statute, and should be in writing.

2. If A purchase goods to be delivered to B, or promise to pay for goods that may be purchased and received by B, it is an original contract on the part of A; and if A and B jointly promise to pay for goods delivered to one of them, it creates a joint debt, and the promise need not be in writing.

3. But two persons cannot be *severally* liable as *principal* debtors for the same debt. Of necessity, the one must be liable as principal, the other as surety.

4. The test question is, whether credit was given to the person to whom the goods were delivered. If it was, the promise of a third person to pay for them, though made at the same time, is a promise to pay the debt of another, and must be in writing.

5. If the consideration of the promise spring from a new transaction, or move to the party promising upon some fresh and substantial ground of a personal concern to himself, the statute of frauds does not apply to the promise.

Hetfield v. Dow.

6. If a notice is given to the owner of a building, under the mechanics' lien law, that lumber delivered to the builder is not paid for, and requests the owner to retain the amount from moneys due from him to the builder, it is evidence from which a jury may infer that the lumber was sold to the builder, and that the credit was originally given to him.

7. An omission of the judge to charge the jury on points material in the case is no ground of error, unless he is requested to charge on those points.

The plaintiffs were dealers in lumber at Bound Brook. The defendant, in the summer of 1856, was building a seminary at Plainfield. One Gibson had contracted with him to build it, and furnish the materials. In August, 1856, Dow came to the saw-mill of the plaintiffs, and inquired of plaintiffs' agent how they would sell him lumber delivered in Plainfield, and said he would want a large quantity, 50,000 feet. The agent then asked him if it was for the seminary; Dow said it was; the agent then named the price, and asked him if this was Mr. Gibson; defendant said no, it was Dow; he said Gibson was going to put up the building, but that he was going to see to the purchase of the lumber himself.

The lumber was delivered at the seminary, and charged by the plaintiffs in their books to Gibson.

The persons who came to order the lumber gave the kinds of lumber to be sent, and would say it was for the seminary.

When Dow was in the yard, on one occasion, looking at lumber, he was asked to whom the lumber should be charged, to him or Gibson; he said he supposed it would make no difference, as he was going to see to the buying of the lumber, and paying for it himself.

Gibson, the contractor, testified that he built the seminary by contract for Dow, and that he, at Dow's request, procured the lumber of the plaintiffs, Dow saying that the bills could be paid out of the last payment to become due on the contract, and that he would guaranty that there should be no difficulty between the plaintiffs and him, if he got the lumber of them. Gibson further said

that he ordered his foreman, in Dow's presence, to get the lumber of the plaintiffs, and that he and Dow had agreed to make that their place of purchase.

The plaintiffs served a notice under the lien law upon Dow, to pay them for the lumber out of the moneys due on the contract.

Upon the trial, the defence set up was that Dow was not *liable*, because his undertaking to pay was void by the statute of frauds, not being in writing; that the goods were furnished on the credit of Gibson, who was the principal debtor, and Dow the guarantor or surety of Gibson's debt.

The judge charged the jury that the question was, whether the lumber was delivered on the account and credit of Dow or of Gibson: if on the credit of Dow, he was liable, if he was the original debtor; if on the credit of Gibson, and he was the original debtor, then he, and not Dow, was liable; that if Dow ordered the lumber, and promised to pay for it, and the plaintiff accepted the promise, and on the faith of it delivered the lumber, he was liable. That " let him have the goods, and I will pay for them," was one original agreement. " Let him have the goods, and I will be security, or see you paid," is collateral, and must be in writing.

The error is assigned on this charge of the court. The verdict was for the defendant.

Argued at February Term, 1859, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH, and WHELPLEY.

*G. H. Brown*, for the plaintiffs in error.

*C. Parker*, for defendant.

The CHIEF JUSTICE. This action was brought for the recovery of a bill of lumber, furnished by the plaintiffs, and used in the construction of a house owned by the defendant. The house was built by George F. Gibson, under a written contract with Dow, the defendant. By the terms

of the contract, Gibson was to furnish the materials. They were charged to him in the books of the plaintiffs. The claim was presented to him; and, after his failure to pay it, notice was given to Dow, as the owner of the house, of the amount of the claim against Gibson under the provisions of the mechanics' lien law. It was in evidence that the defendant, before the delivery of the lumber, had called at the plaintiffs' lumber yard, inquired the price of lumber, given directions for its delivery, said that Gibson had the contract for the building; but it made no difference whether the lumber was charged to Gibson or to himself, " as he was going to see to buying the lumber, and paying for it himself."

The court charged the jury, among other things, as follows: " The question then is, was the lumber delivered on the account and credit of Dow, or was it delivered on the credit of Gibson, the builder? If on the credit of Dow, in consequence of any promise, express or implied, on his part, he is liable, if they made him the original debtor. If on the credit of Gibson, and he was made the original debtor, then Gibson only is liable. In that case the liability of Dow would be only collateral, and cannot be enforced, unless it were in writing. If Dow were there merely to see where the lumber could be bought to the best advantage, either to favor Gibson or to patronize the plaintiffs, whose neighbor he was to become; if he made no promise to pay, he is not liable. But if he ordered the lumber, and promised to pay for it, and the plaintiffs accepted the promise, and on the faith of it delivered the lumber, he is liable. ' Let him have goods, and I will pay for them,' is an original agreement. ' Let him have goods, and I will be security for them,' or, ' I will see you paid,' is collateral, and must be in writing.

" Again, under that contract, and in pursuance of a section in the mechanics' lien law, the plaintiffs, on the 14th of March, 1857, after the delivery of the last items of the lumber, gave notice of their claim against Gibson for the precise amount of the bill now in question, for goods,

wares, and merchandise sold and delivered to Gibson, to be used by him in the erection of the seminary. If this relates to the lumber in question, it is evidence from which you may infer that the articles were sold and delivered to Gibson; that they were delivered on his credit; that he was made the debtor, and that the offer of Dow to pay for them was not accepted. It is evidence of an admission on the part of the plaintiffs, that they did not look to the defendant on an original contract, but that they would rely on the obligation raised under the statute."

To this charge the plaintiffs in error, who were the plaintiffs below, except, and rely upon these exceptions as grounds of error. The real questions before the jury were, whether the lumber in question was furnished by the plaintiffs upon the credit of the defendant or of Gibson, the contractor; and if upon the credit of the contractor, then whether there was any contract or promise by the defendant which was valid, and could render him liable for the payment of the debt. The well-settled rules of law touching the application of the statute of frauds and perjuries to promises to pay the debts of another, are fairly stated in the charge of the court. Whether any promise was made by the defendant, and whether made by him as principal or as mere security for the debt of the contractor, were properly submitted for the consideration of the jury.

The jury have found, in accordance with what appears to be the clear weight of the testimony, that the goods were sold and delivered upon the credit of Gibson, the contractor, and not of the defendant.

It is insisted that the judge should have charged the jury that, though the lumber was delivered and credited to Gibson, yet if the defendant, at or before the sale and delivery of the lumber, also promised to pay for it, it was an original, not a collateral promise on his part—a promise to answer for his own debt, and not for the debt of another. The question, to which of the two credit was originally given, was fairly left to the jury, upon all the

Hetfield v. Dow.

evidence in the case. The alleged error is, that the judge did not go further, and tell the jury that both might be original debtors, each promising, severally for himself, to pay the debt.

If A purchase goods to be delivered to B, or promise to pay for goods that may be purchased and received by B, the promise of A is clearly an original contract, an engagement to pay his own debt, and not the debt of B. So if A and B jointly promise to pay for goods delivered to B, A and B are joint original debtors: it is a joint promise to pay the indebtedness of A and B, and not a promise by A to pay the debt of B. Such a promise is not within the statute.

And if A and B should severally promise to pay for goods delivered to B, if the question were now to be settled, it might be argued that both were equally original independent promises. How, it might be asked, can A's promise be a promise to pay the debt of B, when, at the time of the contract, B owed no debt; both promises being simultaneous and parts of one and the same transaction. "Whether," says Mr. Justice Story, "by the true intent of the statute, it was to extend to cases where the collateral promise, so called, was a part of the original agreement, and founded on the same consideration moving at the same time between the parties, or whether it was confined to cases where there was already a subsisting debt and demand, and the promise was merely founded upon a subsequent and distinct undertaking, might, if the point were entirely new, deserve very grave deliberation." "But," he adds, "it has been closed within very narrow limits by the course of the authorities, and seems scarcely open for general examination." *D' Wolf* v. *Rabaud*, 1 *Peters* 499.

The course of adjudication seems clearly to have settled the point, that where the party to whom the goods are delivered become personally liable for the payment of the debt, the engagement of any other person, though

made at the same time and upon the same consideration, is a promise to pay the debt of a third person, within the meaning of the statute. The latter engagement is regarded not only as subsidiary, but as collateral. And the test question of the promise, being within the statute, is, whether it is a promise to pay the debt of another, for which that other remains liable. ' *Birkmyr* v. *Darnell, Salk.* 27; *Forth* v. *Stanton,* 1 *Wm. Saunders* 211, *note* 2; *Roberts on Frauds* 209; *Chitty on Con.* 447, *note* 2. The authorities are not now to be shaken, and the general line now taken is, that if the person for whose use the goods are furnished be liable at all, any other promise by a third person to pay that debt must be in writing, otherwise it is void by the statute of frauds. Per Buller, J., in *Matson* v. *Wharam,* 2 *D. & E.* 80.

But if there were room for doubt upon this point, there is no error in the charge of the court, because there is no pretence in the evidence that there were distinct engagements by the defendant and by Gibson to pay for the lumber. The defendant said it was no matter to which of the two it was charged; and the question before the jury was, upon whose credit was the lumber furnished. If the credit was given to Gibson, there was no promise by the defendant to pay for that debt.

It is further insisted that the court erred in not instructing the jury that the case was not within the statute of frauds, because the consideration of the defendant's promise was a matter of interest to himself. As has been said, the real question in the case was, whether there was any promise by the defendant to pay for the lumber. If the credit was not given to him, but to Gibson, there is no evidence of a promise by the defendant to pay for it. The charge, therefore, upon this point, if lawful, would have been irrevelant. Nor is it preceived that the charge would have been lawful if there had been evidence of an express promise by the defendant to pay at the time of contracting the debt. The rule is, that if the consideration

of the promise spring out of a *new transaction*, or move to the party promising upon some *fresh and substantive ground of a personal concern to himself*, the statute of frauds does not attach upon the promise. *Roberts on Frauds* 232; *Gold* v. *Phillips*, 10 *Johns. R.* 412; *Myers* v. *Morse*, 15 *J. R.* 425; *Stocking* v. *Sage*, 1 *Conn. R.* 519; *Colt* v. *Root*, 17 *Mass. R.* 229; *Nelson* v. *Boynton*, 3 *Metc.* 396; 1 *Parsons on Con.* 498; 2 *Parsons on Con.* 305.

If, then, the plaintiffs had refused to credit Gibson, or if, after contracting with him, they had refused to deliver the lumber, and the defendant, in order to secure the erecting of his house, had thereupon promised to pay in case the lumber were delivered, and the lumber had thereupon been delivered, there would have been a case for the application of the principle; there would have been a new original contract on the part of the defendant to pay the debt, founded on a consideration personal to himself. But upon the evidence in this case there existed no such consideration for the promise of the defendant.

It is urged, as a further ground of error, that the court should have charged the jury that the case was out of the statute, because the undertaking of the defendant was to pay the debt out of the goods of Gibson in his hands. This instruction would have been proper in a case where it was applicable. *Andrews* v. *Smith*, 2 *Cr., Mees. & Ros.* 627.

But there was no evidence of any contract on the part of the defendant to pay the debts out of the goods of Gibson in his hands. And if there had been such evidence there could have been no recovery, except in an action founded on the special contract. *Sweeting* v. *Asplin*, 7 *Mees. & Wels.* 164; *Sherman* v. *Stanton*, 1 *Tyler* 350.

There is a further answer to each of the exceptions taken to the charge of the court, admitting that in each particular the charge desired by the defendant would have been relevant and proper. The matters complained of are mere omissions, and the judge was not requested, upon the trial,

to charge as it is now insisted he ought to have done. The rule is well settled that such omission constitutes no ground of error. If either party deems any point presented by the evidence to be omitted in -the charge, it is competent for such party to require an opinion from the court upon that point. If he does not, it is a waiver of it. *Pennock* v. *Sellers*, 2 *Pet.* 15.

There is no error in that part of the charge that instructed the jury that a notice from the plaintiffs to the defendant, under the mechanics' lien law, that the amount of the bill for lumber was due to them from Gibson, was evidence from which the jury might infer that credit for the articles was originally given to Gibson, as the purchaser. Neither the entry in the plaintiffs' books against Gibson, nor the notice to the defendant that he was debtor for the amount, was *conclusive* evidence that the sale was made to Gibson, nor did the court so instruct the jury. But, until explained or contradicted, either fact was evidence from which the jury might find that the original credit was given not to the defendants, but to Gibson.

The judgment should be affirmed.

WHELPLEY, J. The plaintiff insists that the true test by which to determine whether the defendant was liable, was not stated to the jury; that it did not follow that Dow was not liable because Gibson was; that both might be liable, either jointly or severally, upon an original joint or several undertaking; that if the defendant said, I wish you to furnish the lumber for the building, I will pay for it, and they did furnish it, relying on this order, .that Dow is liable, although at the time it was furnished they charged it to Gibson, also relying on his promise to pay for it.

The judge, at the trial, left it to the jury to determine, from the evidence, which was the original and principal debtor, Dow or Gibson.

The object of the 14th section of the statute of frauds

was to render incapable of enforcement contracts actionable had not that statute been passed. Much of the contrariety of decision upon this section seems to have been occasioned by losing sight of this primary consideration.

A promise, upon sufficient consideration, to pay the debt of another, whether contracted previously or at the time of the promise, is good at common law; but here the statute intervenes, and declares that no such promise shall support an action, unless it, or some memorandum or note thereof, is in writing, signed by the party to be charged thereby, or some other person thereunto by him lawfully authorized.

It was the grand design of the statute to protect parties from liability for the debts, defaults, and miscarriages of others, sought to be imposed upon them by the testimony of perjured or mistaken witnesses swearing to promises never made; to fix responsible parties with the liabilities of the irresponsible; to prevent loose expressions, casually dropped, never intended to constitute a contract, being tortured into a solemn contract to charge the pretended promisor; to put it out of the power of perjury or mistake to charge a party for debts not his own, by requiring, in all such cases, an acknowledgment in writing.

So salutary has been the operation of this statute, that its principle and rule has been applied by the British parliament to promises to pay debts barred by the statute of limitations. The principle of the enactment is, that the relation of principal and surety shall not be created by parol without writing.

What do the words "debt of another" mean? When, and in what way, does a debt attach itself to one, so as to become, as to all others, the debt of another? These are questions that require solution in construing the statute, and they have been the themes of elaborate legal casuistry ever since the enactment of the statute.

It is much to be regretted that, in applying to the provisions of this statute, courts, in attempting to adjust them

to the equities of particular cases, have adopted distinctions so refined as in many cases to amount to a virtual repeal of the act. It is far better, when a case of apparent hardship arises, to save the law at the expense of the case, than the case at the expense of the law. Hard cases make harder law. In attempting to reach the justice of one case over a settled rule, the rights of thousands are rendered uncertain and jeopardized.

That the operation of the statute is not confined to antecedent debts, has long been settled. To use the language of Judge Story, in *D' Wolf* v. *Rabaud*, 1 *Pet.* 499, " Whether, by the true intent of the statute, it was to extend to cases where the collateral promise, so called, was a part of the original agreement, and founded on the same consideration moving at the same time between the parties, or whether it was confined to cases where there was already a subsisting debt and demand, and the promise was merely founded upon a subsequent and distinct undertaking, might, if the point were entirely new, deserve very grave deliberation. But it has been closed within very narrow limits by the course of the authorities, and seems scarcely open for general examination, at least in those states where the English authorities have been fully recognized and adopted in practice. *Anderson* v. *Hayman*, 1 *H. Black.* 120 ; *Matson* v. *Wharam*, 2 *T. Rep.* 80 ; *Jones* v. *Cooper, Cowp.* 227 ; *Smith's Merc. Law* 455 ; *Forth* v. *Stanton*, 1 *Wm. Saunders* 211, *note* 2 ; *Cahill* v. *Bigelow*, 18 *Pick.* 371 ; *Carville* v. *Crane*, 5 *Hill* 485 ; 1 *Smith L. C.* 213, *notes to Birkmyr* v. *Darnell*, and cases there cited, are abundant confirmation of this doctrine. If the statute applies to cases of sales made at the time of making the promise, and be not confined to cases of antecedent indebtedness, it would seem to be exceedingly clear that the question, whether the promise was within the statute or not, must be determined by settling whether the sale of the goods was made and the credit given to both jointly, or to one of them, and if so,

to which of them; if to one, he must be the principal debtor, and the other mere surety, and his undertaking collateral.

How can two persons be liable, as original principal debtors, upon a parol contract, not in writing, for the entirety of the same debt? To state the proposition seems its best refutation. If the liability of the one is complete by itself, and not dependent upon or collateral to the other, then payment *by* one would not be payment *for* both, and the fortunate possessor of such an undertaking might enforce double satisfaction for the same debt. If the undertakings be not independent, one must be collateral to the other, and that which is thus collateral must be subject to the operation of the statute.

Neither the case of *D'Wolf* v. *Rabaud*, 1 *Pet.* 476, nor *Townsley* v. *Sumral*, 2 *Pet.* 170, supports the doctrine that both the person to whom the goods are furnished, and the person at whose request they are furnished, may be liable on distinct independent contracts as principal debtors, so that the promise of the one is not collateral to that of the other, and both be principal debtors.

The criticism of Cowen, Justice, in *Carville* v. *Crane*, 5 *Hill's Rep.* 485, upon the *dictum* of Story, in D'Wolf *v.* Rabaud, is just—that the learned judge admitted he was not following the construction of the statute, but suggesting what might be the better construction were the question *res nova*, viz., that where the engagement of the surety and principal are simultaneous, and on the same consideration, the case is not within the statute. In that case the undertaking of the surety was in writing, and the only question was, whether the consideration must appear in the writing, or might be shown by parol evidence.

Townsley *v.* Sumral states *this* doctrine as the foundation of the decision: "If a person undertake, in consideration that another will purchase a bill already drawn, or thereafter to be drawn, and as an inducement to the purchaser to accept it, and the bill is drawn and purchased

upon the credit of that promise for a sufficient considera-
tion, such promise to accept is binding upon the party. It
is an original promise to the purchaser, not merely a promise
for the debt of another, and having a sufficient consid-
eration is binding.      Judge Story likens the case, and
very properly, to a payment of money by one to another
on request; that a promise to repay would be an original
promise.      The acceptance in that case would make the ac-
ceptor the principal debtor to the holder of the bill;
and if paid at maturity, the drawer would be discharged in-
cidentally.

That contract was for this consideration : " I promise that,
if you will pay to A $500, and he will draw a bill on me
for that sum, I will accept and pay it." Perhaps the case
may be explained consistently with a sound construction of
the statute upon the rule, which seems to rest upon sound
reasoning, that where the payment of the debt of a third
person is a mere incidental result of the payment of
the promisor's own obligation, the case is not within
the statute.      A man shall not escape payment of his
own debt, because, in paying it, he incidentally pays that of
another.

The engagement of the principal debtor is always bind-
ing.      The collateral promise, that is, the promise to
pay the debt of another, is what the law requires to be in
writing.

Where the promise is to pay for goods supplied to a third
party, if the third party be liable at all, the promise
is within the statute; but if the articles are supplied
entirely on the credit of the promisor, so that the third
party is not liable at all, then the promise is not within
the statute.      1 *Bac. Ab., title "Agreement,"* C 2, (*Bouv. ed.*)
Shaw, Ch. Just., in *Cahill* v. *Bigelow* 18 *Pick.* 371, lays
down the rule correctly.      That the test is this : where the
promise is made before the credit is given, to decide
whether one promising is an original debtor or a guaran-
tor, namely, whether credit was given to the person re-

ceiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt. If no credit was given to the person receiving the goods, then the promisor is himself debtor for goods sold to him, and delivered to a third person by his order; his promise is not to pay the debt of another. He cites Matson v. Wharam, Jones v. Cooper, and Anderson v. Hayman, and distinctly overrules Perley v. Spring, a case previously decided by the Supreme Court of Massachusetts, reported in 12 *Mass. Rep.* 297.

To the same effect are *Forth* v. *Stanton,* 1 *Wm. Saunders* 211, *note* 2; *Leonard* v. *Vredenberg,* 8 *Johns.* 37, decided by Kent, Ch. Just.; *Tileston* v. *Nettleton,* 6 *Pick.* 511; *Chitty on Con.* 402, 405; *Robb on Frauds* 209; *Keate* v. *Temple,* 1 *Bos. & Pul.* 158; *Brady* v. *Sackrider,* 1 *Sand. Sup. Ct. Rep.* 514; *Conolly* v. *Kettlewell,* 1 *Gill.* 260.

The case of D'Wolf v. Rabaud and Townsley v. Sumral, pressed by defendant's counsel as ruling this case, are in conflict with the whole current of authorities, so far as they support the doctrine contended for, that the liability of the person for whose use the goods were furnished does not render the engagement of a third party collateral, and cannot be supported. We have already seen that these cases are, perhaps, susceptible of being supported consistently with the doctrine of the leading case upon this subject, Matson v. Wharam. I have found it impossible to notice all the cases upon this subject without being unreasonably prolix, but enough have been cited to show the decided weight of authority upon this point.

In this case, the action was upon the several contract of Dow. It does not appear that the idea of a joint contract was started on the trial, or in any way set up before the court or jury. The attention of the judge was not drawn to it by any request to charge that Dow and Gibson might be held upon a joint contract; indeed there was no evidence in the case of such a contract, and a request to so charge would have been of no avail. It is not

the duty of the court to state to a jury the law upon a point not presented by the case, although requested so to do. The evidence tended to show that if Dow was liable, his promise was several, not joint. The statute was intended to control the creditor's right of action, to determine to whom resort can be had for payment of his debt; whether there is a contract which can be enforced by action.

To settle the rights of the promisors *inter sese*—to ascertain, as between them, who is to pay the debt ultimately —is no part of the object of the act. It by no means follows that he who, by the arrangement between the promisors, ultimately may be bound to pay the debt is, as to the promisee, the principal debtor; that does not concern him.

The statute operates upon the contract, as shaped by the parties. In all these cases the question is, what is the meaning of the phrase "debt of another" to the promisee; which is the debtor, and which the guarantor, not *inter sese*, but to the creditor.

If A be bound to deliver to C twenty shares of stock by a certain day, and C promises B, on sufficient consideration, that A shall deliver the stock to B, that is not a promise within the statute—the promise is original, not collateral. A is not bound by any promise made by him to B, because none has been made; therefore C's promise is not collateral. B has no action against A, but has against C. To make one promise collateral to the other, both must be to the same promisee, so as to give, if both were valid, a double remedy. *Eastwood* v. *Kenyon*, 11 *Ad. & El.* 438; *Hargreaves* v. *Parsons*, 13 *M. & W.* 561; *Johnson* v. *Gilbert*, 4 *Hill* 178.

These cases show that, in some degree, the question, whether the statute operates, depends upon the form of the engagements. The statute applies only to promises made to the person to whom another is already, or is to become answerable. It must be a promise to be answer-

able for a debt or default in some duty by that other person toward the promisee.

To look the question in the face. The party to whom and for whose use the goods are furnished, is clearly liable to the vendor, either upon an express or implied promise. Now if, before the delivery, another person said to the vendor— let him have the goods, and I will pay for them, and the vendor, in partial reliance upon that promise, but still relying on the credit of the party who had them, delivered the goods, the latter promise would be good at common law— so would the former ; both would be good, did not the statute intervene.

Here are distinct promises, upon both of which, at common law, an action would lie. The consideration, which supports both, has not moved from the vendor to both promisors; both have not received the actual benefit. One must be the original principal promise, and the other the collateral—made in aid of the former. The mere form of the expression used by the promisors, " I will pay for them," or " I will see you paid for them," or " pay for them if he does not," does not, in all cases, solve the difficulty. A promise may be absolute in form, yet but a guaranty in fact. The law settles the difficulty by the application of the simple test, who has had the goods on his promise, express or implied ; (and the law will not imply a promise by one, if the other has made an exclusive express promise.) He is the principal debtor, the other the guarantor. Where one promisor is liable, the other is not, and *vice versa*, unless the liability be joint. That is the principle of Matson *v.* Wharam and Cahill *v.* Bigelow.

The statute should receive a construction establishing a rule certain and easily applied by all in the transaction of their ordinary business, and none can be found better fulfilling these conditions than that of Chief Justice Shaw, stated in Cahill *v.* Bigelow, and applied by the judge, at the trial, to the solution of the present case.

Unless we are prepared to fritter away the evident im-

Hetfield v. Dow.

port of the statute by subtle refinements, incomprehensible to those upon whose business transactions the statute operates, such a rule should be adopted and adhered to, not to be departed from on every occasion when it may seem to be somewhat harsh in its operation. The rule is founded upon a construction harmonizing with the object of the act, and is eminently plain as well as practical.

It was urged that Dow's promise was to pay the debt out of the funds of Gibson in his hands, and therefore fell without the statute, and brought the case within the rule of *Andrews* v. *Smith*, 2 *Cr.*, *Mees. & Ros.* 627; and *Sweeting* v. *Asplin*, 7 *M. & W.* 173; and *Barker* v. *Bucklin*, 2 *Denio* 45, viz., that an undertaking to pay for another, out of his funds, when they come to hand, is no more than a prospective assignment of a particular fund, with an attornment of the defendant to the assignment; that a promise to pay another's debt, not out of funds of the promisor, but by faithfully applying the debtor's own funds, when they come to hand, is not within the statute.

In Andrews *v.* Smith, the declaration was special upon a contract to pay one Hill's debt, or for goods supplied to Hill by plaintiff, out of moneys received by defendant belonging to Hill. Lord Abinger, and Parke, Baron, concurred in opinion that the case was not within the statute, upon the ground that it was nothing more than an agreement to apply Hill's funds, when they came to hand, to the payment of Hill's debt. Sweeting *v.* Asplin decides that, upon such a contract, the action must be special; that *indebitatus assumpsit* would not lie, whether the undertaking was original or collateral.

In this case neither the declaration nor the proof brought the case within the rule; the cause was not tried upon that basis; no such question was made at the trial.

The notice given by the plaintiffs under the lien law, treating Gibson as the principal debtor, and Dow as his employer, was clearly competent evidence upon the question to whom was the credit given. The service of the

notice was purely a voluntary act of the plaintiffs; it recognized Gibson as the person indebted to them for the lumber, and claimed payment of the debt upon that express ground.

The rendering of an account debiting the goods to one of the parties, is a fact of more or less weight, according to circumstances, showing who was trusted. *Larson* v. *Wyman*, 14 *Wend.* 246.

The judgment should be affirmed.

Justices OGDEN and VREDENBURGH concurred.

CITED *in Joslin* v. *N. J. Car Spring Co.*, 7 *Vr.* 146; *Price* v. *Trusdell*, 1 *Stew.* 203.