HESS *vs.* FOX, executor of FOX.

An agreement by a mortgagee to sell mortgaged premises, (the equity of redemption in which is released by the mortgagor,) and after deducting the amount due to himself to pay the surplus of such sale to the mortgagor, is not *void* as within the *statute of frauds;* and after a sale of the premises for more than enough to satisfy the debt due to the mortgagee, the mortgagor may maintain *assumpsit* for the surplus.

Such action lies immediately after the sale; it is no defence that the mortgagee has sold *on credit,* and is not in funds.

A contract stated in a special count of a declaration in reference to a mortgage executed to A. is not supported by proof of a contract relating to a mortgage executed to A. *and* B.

A claim arising under such contract may, however, be recovered under the money counts, although there be a *bill of particulars,* referring to the contract as set forth in the special count of the declaration; the strictness governing in relation to a *special count,* does not prevail in reference to a *bill of particulars.*

THIS was an action of assumpsit, tried at the Herkimer circuit in March, 1830, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The plaintiff declared on a *special agreement,* that being indebted to *Frederick Fox,* the testator of the defendant, in the sum of $400, the payment of which was secured by a *bond and mortgage executed by the plaintiff to Fox,* it was agreed that the plaintiff should convey by an absolute deed, and deliver up the mortgaged premises to Fox; and that Fox should discharge the plaintiff from the payment of the $400, cancel the bond and mortgage, sell the premises for the best price that could be gotten, and after deducting the sum of $400, pay over the surplus of the sales to the plaintiff; that in pursuance of the agreement he executed the deed and delivered possession of the premises to Fox, who discharged him from the payment of the $400, and gave up the bond and mortgage; and that after the decease of Fox, the defendant in this cause, the executor of the last will, &c. of Fox, being duly authorized by the will so to do, sold the premises for the sum of $620, by reason whereof the defendant became liable to pay to the plaintiff the sum of $220, being the surplus, &c. The dec-

NEW-YORK,
May, 1833.

Hess
v.
Fox.

laration also contained the *common money counts,* and the plaintiff delivered a *bill of particulars,* stating that he claimed to recover all such monies as the defendant, as the executor of Fox, was liable to pay, under the contract set forth in the first count of the declaration. The defendant pleaded the general issue and *plene administravit ;* the latter plea was admitted to be true, and in respect to it judgment *quando* was taken. On the trial of the cause, the plaintiff produced a bond and mortgage executed by him to *Frederick Fox* and *David Fox,* bearing date 1st July, 1812, conditioned for the payment of $342, with interest ; on the bond was a receipt of *interest* up to 27th December, 1814, and a payment endorsed on the same day, of $25,79, on account of the *principal.* The plaintiff proved by one witness that 5 or 6 years before the trial, *Frederick Fox* admitted that there was due on the said bond and mortgage only $400, and then agreed by *parol* that if the plaintiff would give him a deed of the mortgaged premises, he would sell the same, and retain out of the avails the sum of $400 so due to him, and pay the overplus to the plaintiff. This testimony was substantially corroborated by another witness. The deed from the plaintiff to Fox was produced, bearing date 1st March, 1823, and it was proved that in July, 1827, the defendant, as executor of Fox, sold the premises conveyed by the deed for $517,50, receiving $117,50 down, and accepting a judgment for the residue, payable by instalments, viz. $100 on the 1st July, 1828, and the residue in 6 annual payments. Only $90 had been paid on account of the judgment at the time of trial. On this evidence, the defendant moved that the plaintiff be *nonsuited,* 1. For the *variance* between the declaration and proof as to the bond and mortgage, in the declaration it being stated that they were executed to *Frederick Fox,* whereas the bond and mortgage produced were executed to *David Fox* and *Frederick Fox ;* 2. That it appearing that the $400 to be retained from the avails had not yet been *received,* the plaintiff was not entitled to maintain his action ; and 3. That the contract proved was void, within the provisions of the *statute of frauds.* The judge refused to nonsuit the plaintiff. The defendant then offered in evidence a statement and calculation, in the hand writing of Frederick Fox, of the amount due

NEW-YORK,  on the bond and mortgage executed by the plaintiff, shewing
May, 1833.  the balance due on the 1st March, 1823, to be $542,24, which
Hess  was rejected by the judge.   The jury found a verdict for the
v.  plaintiff for $145.   The defendant moved for a new trial on
Fox.  a bill of exceptions.

*Markell & Nellis,* for the defendant.

*C. Gray,* for the plaintiff.

*By the Court,* SAVAGE, Ch. J.   That the judge was correct
in rejecting the paper offered in evidence by the defendant
cannot admit of a doubt.   Had it been shewn to have been
made by F. Fox at the date of the deed from the plaintiff, it
would not have disproved the evidence on the part of the
plaintiff.

From the arguments of counsel, it seems the decision of the
judge upon the points made for a motion for a nonsuit was ex-
cepted to, and I proceed therefore to discuss them.   1. The
first is that of *variance.*   The answer given by the plaintiff's
counsel is that it is immaterial, as the statement of the mort-
gage was mere inducement to the promise.   But the rule as
laid down by Chitty, 1 *Chitty's Pl.* 295, is, that every allega-
tion in an inducement which is material and not impertinent
and foreign to the cause, and which cannot be rejected as sur-
plusage, must be proved as alleged.   This is particularly true
in setting forth written instruments.   As this count is framed,
the allegation which respects the existence and cancelling the
mortgage cannot be stricken out as surplusage ; and if not,
then it should have been truly stated.   I am therefore inclin-
ed to think the plaintiff's proof insufficient to sustain the spe-
cial count.   It is contended by the defendant's counsel that
the general counts do not aid the plaintiffs, because the *bill of
particulars* refers to the facts specially stated in the special
count.   There is not, however, the same strictness required
in a bill of particulars as in a special count.   It is sufficient if
a bill of particulars gives the desired information as to the na-
ture of the plaintiff's claim, with such certainty that the de-
fendant cannot be misled or deceived.   If he is apprised of the

NEW-YORK,
May, 1833.

Hess
v.
Fox.

evidence to be offered, so that he can prepare to meet it, that is sufficient. I should be glad to apply the same rule to a special count in the declaration, if the authorities would justify it. To be contending about small matters of form, when the merits of a case are not affected, seems to me to be letting down the dignity of the profession from the investigation of principles to a quibble about words.

2. The second point is that the plaintiff cannot recover, because the defendant did not actually receive the $400, but chose to take security for that sum, leaving it upon interest as an investment. It is proper to see what the testimony was upon this point. The plaintiff produced two witnesses. One testified that Fox agreed to sell the land and retain the sum of $400 out of the avails of the land when it should be sold, and pay the overplus to the plaintiff. There is nothing here which looks to a sale upon credit; the time is specified; the $400 are to be retained, and the balance paid *when the land shall be sold.* The other proved that Fox admitted to him that he had agreed by parol that if the plaintiff would give him a deed of the land, he would sell the same, and that all he should sell it for over $400, he would let the plaintiff have. There is nothing in this testimony which contemplates a sale upon credit; but whether upon credit or not, Fox was bound to pay down all he should sell it for over $400. This is not like the case of a person taking property to sell on commission, where he is justified in selling on credit, if such be the usual course of trade. It was certainly matter of no moment to the plaintiff, whether the defendant received his $400 in cash, or left it drawing interest for a number of years. If the defendant's construction be correct, he might have extended the payments as well for twenty years as for seven, and thus defeated or greatly protracted the contemplated benefit to the plaintiff, arising from the sale of the land. 9 *Wendell*, 287.

3. The third exception taken is that the contract was void by the statute of frauds. Is this, within the meaning of the statute, a contract for the sale of lands? The words of the statute then in force are, "That no leases, estates or interests, either of freehold or terms of years, or any uncertain interest of, in, to or out of any messuage, manors, lands, tene-

NEW-YORK,
May, 1833.

Hess
v.
Fox.

ments or hereditaments, shall at any time hereafter be assign-ed, granted or surrendered, unless it be by deed or note in wri-ting, signed by the party so assigning, granting or surrender-ing the same, or their agents," &c.   The meaning of this is, that no interest in lands shall pass otherwise than by deed or writing.   If A. holds lands in trust for B. and agrees by parol that he will sell those lands in market and account to B. for the proceeds, is that agreement within the statute ?   Where a purchaser at sheriff's sale agreed with the former owner to pay him $600 besides the bid and actually did pay $200, and then agreed that the former owner might redeem in two years by re-paying the $200 and interest, but if not, that then he would pay the other $400, it was held, in an action for the $400, that so far as the agreement professed to bind the de-fendant to *reconvey* the land upon being repaid the $200 ad-vanced by him, it was clearly within the statute and void. *Van Alstyne* v. *Wimple*, 5 *Cowen*, 162.   That was a contract for the sale of land between the parties, and it was held, as it had often been decided before, that part of an entire contract being void under the statute, the whole was void, and that the payment of the $400 could not be enforced.   In that case no part of the agreement had been executed ; here the part of the agreement which was incapable of being enforced had been performed.   Fox, I am inclined to think, had the money in his hands for the use of Hess, and ought, in equity and good conscience, to pay it over to him.   No question can arise here as to the validity of the *agreement to sell ;* that was per-formed, and the remaining part was to pay over money, sup-ported by the consideration of land conveyed to the promissor. I am inclined to think that the law will support the equity of the case and sustain the verdict.

New trial denied.