## William P. Moore v. Simon Mandlebaum.

One acting as agent for the owner of property, has no right to make himself the agent of others for the purchase of the property, nor to take any advantage of the confidence his position inspires to obtain the title himself.

Nor can such agent make a valid purchase from his principal without fully and fairly disclosing all the propositions he has received, and all the facts and circumstances within his knowledge, in any way calculated to enable the principal to judge of the propriety of the sale.

Where an agent for the sale of lands entered into an arrangement with third persons to purchase the lands jointly with them, for a certain price, if on examination he should think best, and they advanced him money which they authorized him to pay the owner for the refusal of the land until an examination could be made; and he, without disclosing this arrangement, represented to his principal that he had agreed to sell the lands for a less price; that that was all he could obtain; and that it would be necessary for him to have the title thereto in order to carry into effect the sale; and on these representations obtained to himself a deed of the lands, paying the owner the money so advanced to him, and giving his mortgage without personal obligation for the balance of the price at which he stated he had agreed to sell; but taking back a receipt for the money so paid, the condition of which was that in case the mortgage should not be paid when due, the land should revert to the principal, and the down payment be forfeited; *Held* that the facts constituted a fraud upon the principal, which would authorize him to disaffirm the conveyance.

The land, in such case, in equity and good conscience still belonged to the principal. The effect of the transaction was to place it in the hands of the agent, subject to a trust in favor of the principal by operation of law. And it is competent to prove by parol the facts which create this trust.

And the arrangement between the agent and such third persons having fallen through, and the agent having subsequently sold the land to a bona fide purchaser, for a sum larger than the amount of his payment and mortgage; and conveyed the same, so that the principal was precluded from disaffirming his deed, as well as from enforcing the trust as to the land; *Held* that he was entitled to recover from the agent, in an action for money had received, the difference between the price received by the agent, and the amount of his payment and mortgage.

MOORE *v.* MANDLEBAUM.

The action in such case falls substantially within the rules applicable to actions brought by a principal against his agent for money received by him on the sale of the principal's land. It is not brought to recover back the consideration paid on a contract rescinded, and the plaintiff is under no obligation to tender back what he has received before bringing suit.

No provision of the Statute of Frauds conflicts with such a suit. It is not brought on a parol contract required by the statute to be in writing, nor upon any express contract whatever; but on a duty on the part of the defendant which the law recognizes as springing from the whole transaction.

Though the plaintiff in such case might proceed in equity for the purchase price, on the ground of a trust, and be entitled to a discovery, yet he may, if he see fit, waive his right to a discovery, and proceed at law; taking upon himself the risk of being able to prove his case without the discovery.

As a general rule, when money has been received by a defendant under any state of facts which would, in a court of equity, entitle the plaintiff to a decree for the money when that is the specific relief sought, the same state of facts will entitle him to recover the money in an action of assumpsit for money had and received.

*Heard June 1st, 2d and 5th. Decided July 9th.*

Error to Wayne Circuit.

The action was upon the common counts in assumpsit. The plaintiff claimed to recover of defendant the sum of $13,000 as money had and received by the latter to the use of the plaintiff, on or about August 25, 1853, and interest thereon from that time, as part of the purchase price of certain lands in Houghton county hereinafter described, which it was admitted the plaintiff had owned on and previous to March 23, 1853.

On the trial before a jury, the plaintiff gave in evidence a power of attorney from himself to the defendant, authorizing the latter to sell and convey the said lands for such price as he should think proper; which power of attorney bore date March 23, 1853, and was shown to have been delivered at about its date, to defendant, who immediately sailed for England.

It further appeared that, while in England, the defendant entered into an agreement with Charles M. Wilkins, A. H. Sibley and S. E. Low, which was produced and proved, and read in evidence, as follows:

"This memorandum of agreement, made the twenty-first day of April, 1853, between Charles M. Wilkins, of

30 Bucklersburg, Alexander H. Sibley, of 19 Duke street, St. James, Samuel Eams Low, of 13 Kings Arms Yard, London, and Simon Mandlebaum, of Eagle River, Lake Superior, *witnesseth :*

That said Mandlebaum is by power of attorney from William P. Moore, bearing date the 23d March, 1853, duly authorized to dispose of a certain tract of mineral ground described as follows, *viz:* about 80 acres in section 19, 400 acres in section 30, and 160 acres in section 29, town 55 range 33 west, being in all 640 acres of mineral land on Portage Lake, Lake Superior ; that the purchase price of the said tract is ten thousand pounds; that in order to secure the said tract, it is agreed that said Mandlebaum shall, if necessary, pay to the owner of the said tract £500 for a refusal during a period of six months ; that the refusal being obtained, said Mandlebaum is authorized to draw on Wilkins, Truefit & Co., of 30 Bucklersburg, London, the following sums, *viz:* £500 at one day's sight, £500 at ten day's sight, £500 at twenty days' sight, £500 at thirty days' sight, and £500 at sixty days' sight, making in all the sum of £2,500, which drafts said Wilkins agrees shall be duly honored on presentation, and paid at maturity. The advance of £2,500 thus made by said Wilkins, is for the purpose of enabling said Mandlebaum to pay the sum of £500, if necessary, for the refusal aforesaid, and £100 for a preliminary examination of the tract. This sum of £600 is the entire amount of absolute outlay that the parties hereto agree to expend; the said sum being deemed sufficient to fairly test the quality of the mineral ground, and enable the said Mandlebaum to decide whether the purchase of the tract shall be made or not. · Should the examination of the ground prove unsatisfactory, and the said Mandlebaum should in consequence decline to purchase, then the sum of £2,500 advanced by said Wilkins, shall be returned to him by the remaining parties to this agreement, so soon

as the decision of said Mandlebaum not to purchase the said tract is communicated to said Wilkins in London, excepting however, the sum of £150, which is one-fourth part of the preliminary expenses incurred in this undertaking, and which sum said Wilkins agrees absolutely to relinquish in the event of the purchase of the tract not being made, or otherwise a fourth part of any less sum than £600 that such preliminary expenses may amount to

If after the investigation of the property by said Mandlebaum he shall be satisfied with the same, he shall forthwith enter upon a contract with the owner of said tract for the purchase thereof, [for a sum not exceeding £10,000 (ten thousand pounds), and the said Mandelbaum shall bind himself to pay the owner aforesaid the £2,000 advanced by said Wilkins, and shall immediately send the title deeds of the property to London, where they shall be placed at the disposal of said Wilkins, who shall conjointly with the other parties to this agreement proceed to form a company with ample capital to pay off the balance of the purchase money within the time specified by the contract, and for the efficient working of the mineral tract aforesaid.

When the whole amount of the purchase money shall have been paid, then out of the first moneys received thereafter said Wilkins shall be reimbursed his advance of £2,350, and all profit over and above this sum, whether in money or in shares, shall be equally divided between the parties to this agreement so soon as such money and such shares are paid over by the contemplated company. It is agreed that any loss growing out of this undertaking shall be borne equally by the parties signing this agreement."      [Signed by the parties.]

The counsel for said plaintiff then produced witnesses by whom he offered to prove:—

That said Mandlebaum accepted said power of attorney, and agreed to act as such agent, and to use his best en-

deavors to sell and dispose of said lands as therein and thereby authorized, but was expressly instructed by the plaintiff not to sell said lands for less than Columbus C. Douglass should estimate them to be worth, and was at the time informed that said Douglass, by a written certificate, estimated them to be worth thirty thousand dollars; that after the signing of said memorandum of agreement in London, and before leaving there for Michigan, the said Wilkins, Sibley and Low, placed in the hands of said Mandlebaum the sum of at least two thousand dollars, for the purpose and with the intent that he should, as mentioned in said agreement, obtain therewith the refusal of said lands for six months:

That the said defendant then returned to Detroit, where he arrived on or about the tenth day of May, in the year aforesaid, having said memorandum of agreement in his possession; that on that day he had an interview with the plaintiff in Detroit, in which interview he represented to the plaintiff that he had been in London; that he had there sold or agreed to sell to certain persons (not naming them), the said lands, for the sum of $22,000; that that was the most he could get for them owing to the fact that said Douglass' certificate and estimate of their value was not sufficiently full and explicit; that he had received from said persons $2,000 down as part payment for said lands, and was ready to pay over the same to the plaintiff; that by his arrangement made with said persons it was necessary for him to have an absolute deed for said lands, to enable him to consummate the bargain; that in order to insure to the plaintiff the payment of the remaining $20,000 by said persons within six months, he would himself execute back to said plaintiff a mortgage on said lands, conditioned to pay him the $20,000 within six months; and that unless said parties should pay said plaintiff said sum within that time, the said Mandlebaum would reconvey the lands to said plaintiff, and that said sum of $2,000 should, in that case, be forfeited.

MOORE *v.* MANDLEBAUM.

And plaintiff's counsel further offered to show that said defendant did not in said interview, nor at any time thereafter, make known to plaintiff the fact that he had entered into such agreement; and that he had agreed with said Wilkins, Sibley and Low not to make said memorandum of agreement, or the contents thereof, known to said plaintiff.

And the plaintiff's counsel further offered to prove that said plaintiff, being deceived as to the true state of the facts as exhibited by said agreement, and by the false representations made to him by said defendant, consented to accept said $2,000, and to give defendant an absolute deed of said lands for the purpose of enabling him to carry out and consummate the pretended arrangement with said persons in London: that said deed was executed, acknowledged and delivered accordingly, and that said Mandlebaum executed, acknowledged and delivered to said plaintiff, a mortgage on all said lands, of the same date, conditioned for the payment of $20,000 in six months from its date; that no bond, note or other security was given by said Mandlebaum to which said mortgage was collateral:

That at the same time, at the request of said Mandlebaum, and as a part of the same transaction, said plaintiff gave to him the following receipt:

"Received, Detroit, May 10th, 1853, of Simon Mandlebaum, Esq., two thousand dollars, being part of the purchase money of certain lands in the county of Houghton, state of Michigan, which I have this day conveyed to said Mandlebaum, and on which he has given me a mortgage conditioned for the payment of twenty thousand dollars in six months from the date hereof; and in case of failure on the part of said Mandlebaum to pay the said sum of twenty thousand dollars at the time mentioned in said mortgage, the lands conveyed to revert to me the said Moore, and the sum of two thousand dollars men-

tioned in this receipt to be forfeited and remain the property of me, said Moore, the same being liquidated damages for the failure of said Mandlebaum to fulfil the conditions of the mortgage aforesaid.

WILLIAM P. MOORE."

The plaintiff's counsel further offered to prove that immediately after the giving of said deed, mortgage and receipt, said Mandlebaum drew five drafts upon Wilkins, Truefit & Co., London, to the amount of £2,500, founded upon the said articles of agreement, and sent said drafts forward for collection, but all which drafts were returned protested for non-acceptance and non-payment:

That the said defendant fraudulently concealed from the plaintiff the drawing and transmission of said drafts, and that said plaintiff had no notice or knowledge thereof, until long after the 26th of August following.

The plaintiff's counsel further offered to show, that on the 24th day of August, 1853, the said defendant sold and conveyed by warranty deed of that date, to one Henry Weld Fuller for the Ripley Copper Company, all the said lands, for the following consideration, to wit: said company was to pay the defendant down the sum of fifteen thousand dollars, and to pay off the said mortgage of twenty thousand dollars thus given to plaintiff; which sum of fifteen thousand dollars the said company paid to defendant on the 25th day of August, 1853.

All which offers of evidence were rejected by the Circuit Judge, and plaintiff excepted.

Judgment having passed for the defendant below, plaintiff brought error.

*J. M. Howard*, for plaintiff in error:

Mandlebaum held the title to the land in trust merely, and for the purpose of carrying out a contract he had made as the agent of Moore. There is no pretence that Mandlebaum as purchaser paid any thing for the land, or

that Moore treated with him as a party. He treated with him only as his *agent;* placing in him the utmost trust and confidence, and implicitly believing all he said. He agreed to fulfill a bargain for Moore, which he said he had made under Moore's power of attorney; and Moore in giving the absolute deed, innocently supposed he was carrying out that bargain as an honest and honorable man should. He gave the deed for *that purpose, and for no other.* The $13,000 then belongs to Moore. It was the proceeds of *his* land. The land was to remain his until the London parties should pay him $20,000 mentioned in the mortgage, and if Mandlebaum sold to others in violation of his agency, no proposition of law can be clearer than that the proceeds belonged to his principal: — *Story on Agency,* § 214 ; 1 *Pars. on Cont.* 74, 75.

Mandlebaum obtained the deed by fraud. It was therefore void: — 13 *Pet.* 36. But he passed the title over to an innocent purchaser, thus rendering it impossible for Moore to reclaim the land. We sue for the $13,000 upon the implied promise raised by the law that he shall pay it to us as a part of the proceeds of our lands. That the action lies, see 10 *Wend.* 436 ; 2 *Cush.* 226 ; 4 *Mass.* 488 ; 17 *Pick.* 545 ; 2 *Burr.* 1005 ; 2 *B. & B.* 369 ; 1 *Chit. Pl.* 352 ; 3 *Taunt.* 274 ; *Cowp.* 197 ; 5 *Cush.* 126 ; 18 *N. Y.* 546 ; 1 *Sumn.* 277, 317 ; 3 *Dall.* 357 ; 19 *Conn.* 548 ; 9 *M. & W.* 54 ; 4 *M. & Gr.* 11 ; 4 *Gray,* 518 ; 36 *E. L. & E.* 424 ; 18 *Ill.* 228.

*A. B. Maynard, A. Pond,* and *H. H. Emmons,* for defendant in error:

1. The evidence offered was inadmissible to show that defendant received and held the title to the land as agent of the plaintiff, and not in his own right. This would be an attempt to " create" or prove an express trust in lands by parol evidence, in violation of the statute of Frauds : — *Comp. L.* § 3177 ; *Lead. Cas. in Eq. Vol.* 2 *pt.*

MOORE v. MANDLEBAUM.

1, 529, *et seq.*; 4 *Russ.* 423; 5 *Johns. Ch.* 1; 5 *Cush.* 90; 2 *Green Ch.* 362; 4 *W. & S.* 149. The prior existence of the relation of principal and agent can in no way vary the case. The power of attorney was executed long prior to the deed and mortgage. They do not refer to each other, and have no necessary or natural connection. So far as the establishment of an express trust is concerned, the case stands as if the only writings executed were the deed, mortgage and receipt.

2. The evidence was inadmissible to show that the deed was obtained by fraud, since fraud in the consideration of a deed can not be shown at law to avoid it: — *Pow. on Cont.* 200; 2 *Kent,* 464; 13 *Johns.* 430; 5 *Cow.* 506; 8 *Cow.* 290; 9 *Cow.* 307; 12 *Johns.* 327; 4 *Wend.* 471; 5 *Cow.* 509; 1 *Zab.* 18; 1 *Dutch.* 482; 6 *Mumf.* 358; 2 *Rand.* 426; 1 *Jones,* 360, 168; 3 *Ired.* 310; 7 *Ind.* 155; 1 *Dev. & Bat.* 492; 4 *Harr.* 357; 4 *Ala.* 300; 27 *Ala.* 203; 1 *Mo.* 100, 446; 6 *Mo.* 59; 1 *J. J. Marsh.* 141; 3 *Blackf.* 170; 14 *S. & R.* 206; 4 *Mass.* 487; 16 *Mass.* 348. On the trial below, counsel insisted that they did not seek to avoid the deed, but only to show fraud on the part of defendant, and that he had received the money in consequence of the fraud. But he could claim the money on no other ground than that the deed was, as between the parties, *void,* so that defendant held the title, and sold and received the purchase money, as agent or trustee for plaintiff. If defendant had, by fraud, obtained money from the plaintiff, the case would be entirely different. Upon no theory can this money be held to belong to the plaintiff unless the property producing it belonged to him; which in this case can not be said without avoiding the deed.

3. If the deed could be avoided in a court of law for fraud in the consideration, plaintiff could not maintain an action based upon such avoidance without showing that he had, prior to the commencement of the action, rescinded

the contract, tendered back the consideration received un-
der it, and placed the defendant in *statu quo;* and as
he did not offer to do this, evidence to show fraud was
inadmissible: — 4 *Mich.* 508; 13 *Barb.* 641; 8 *Barb.* 9;
23 *Barb.* 656; 1 *Denio,* 69; 2 *Hill,* 288; 5 *Hill,* 398;
34 *N. H.* 556; 5 *Met.* 52; 41 *Me.* 565; 1 *Swan,* 72; 1
*Doug. Mich.* 330. *Case* might be maintained without any
rescision or tender back of what was received. But the
recovery then would be limited to the *real injury* — the
difference between the amount paid plaintiff and the *actual
value* of the land.

CHRISTIANCY J.:

The evidence offered by the plaintiff was improperly
refused by the court. It appeared inferentially from the
evidence which had already been given, that the defend-
ant had accepted and recognized the power of attorney,
and that he had, in effect, assumed to act as the agent
of the plaintiff; and the plaintiff offered to show that he
had fully and in fact recognized the agency, and induced
the plaintiff to place confidence in him, as such. In that
confidential relation he was bound to the utmost degree
of good faith, · and had no right, while professing to act
in that capacity, to make himself the agent of other par-
ties for the purchase of the lands he was authorized by
the plaintiff to sell; nor to take any advantage of the
confidence his position inspired, to obtain the title himself.
Nor could he make a valid purchase from his principal,
while that confidential relation existed, without fully and
fairly disclosing to his principal all the propositions he
had received, and all the facts and circumstances within
his knowledge, in any way calculated to enable his prin-
cipal to judge of the propriety of such sale.

By his agreement with Wilkins and others in London,
which appears to have been read in evidence without ob-
jection, it clearly appears that the defendant violated his

duty to the plaintiff, or that he would be compelled to prove recreant to them : he had undertaken to act in two inconsistent capacities. For, while recognizing and referring to the power of attorney, he assumes the position of a joint purchaser, to some extent, of the same lands, with the three London parties, and undertakes to act as their agent, in a manner wholly inconsistent with his duties to the plaintiff. *Prima facie*, this agreement is indicative of an intent to defraud the plaintiff, his principal. There was but one way in which it could be reconciled with good faith and honesty of purpose, and that was by laying the whole transaction, every fact and inducement connected with, or bearing upon it, fully and frankly before his principal; and if *he then* chose to ratify it, or to continue further to avail himself of the defendant's agency in the sale, the transaction would have been fair and honorable towards the plaintiff at least. Whether he did this or not, this court have no means of knowing except from the offer of the plaintiff to prove the contrary; and for the purpose of disposing of this case in this court, we are under the necessity of considering the evidence offered and rejected as true. The further evidence offered by the plaintiff and rejected by the court, would, if it had fully met the offer as made, have tended strongly to show, and would have authorized the court or a jury to find, substantially, that the defendant, on his return from London, in accordance with a previous understanding with his associates there, fraudulently concealed from the plaintiff all knowledge of the agreement in question, falsely representing to the plaintiff that he had sold the land to certain parties in London, not naming them, for only twenty-two thousand dollars, which he represented to be the highest sum he could obtain for them; of which he had received two thousand dollars down, which he was ready to pay over: and by the fraudulent concealment of all the real facts of the case, as well as by various false and fraudulent repre-

sentations and pretences (particularly set forth in the bill of exceptions) induced the plaintiff to believe such sale had been made, and though the power of attorney had been exceeded, to consent to the sale thus fraudulently represented to have been made; and that the defendant, still professing to be acting as the agent and for the interest of the plaintiff, who still reposed confidence in him as such, induced the plaintiff to receive the two thousand dollars, as part of the supposed purchase price; and that by equally false and fraudulent representations, and, as he led the plaintiff to believe, for the purpose, and as a necessary or convenient means, of carrying into effect his agency in completing the sale to the London parties, he induced the plaintiff to execute to him a deed of the property, taking back a mortgage from the defendant without any personal liability on his part, for the supposed balance of twenty thousand dollars in six months; the defendant representing to the plaintiff that if this sum should not be paid by the purchasers within the time, he would reconvey to the plaintiff, and the two thousand dollars would be forfeited to him. In short, such evidence would have shown that the defendant purposely took advantage of the confidence which he knew the plaintiff reposed in him as his agent, and obtained the deed from him by a gross and deliberate fraud; a fraud not depending upon the subsequent non-performance of a parol promise, but an actually preconceived and deliberate intention to cheat and defraud the plaintiff, accompanying and forming part of the transaction itself.

The deed being thus obtained, the land in equity and good conscience, as between the plaintiff and the defendant, still belonged to the plaintiff; or, to express the same idea in the more formal and technical language of a court of equity, the effect of the transaction was to place these lands in the hands of the defendant, subject to a *trust* in favor of the plaintiff, *by operation of law ;* such being

the *legal effect* which a *court of equity* would give to the *whole transaction*: — See *Lloyd v. Spillet*, 2 *Atk.* 250; *Rutherford v. Ruff*, 4 *Desaus.* 350; 1 *Paige*, 147; 2 *Bouv. Inst.* 327.

This species of trust may always be proved by parol, notwithstanding the statute of frauds. If this could not be done, the statute, which was intended to *prevent* fraud, would itself become the most efficient *protection* to fraud ever contrived by human ingenuity: — See *Hill on Trustees*, 166; 1 *Hovenden on Frauds*, 471, *and cases cited; Jenkins v. Eldredge*, 3 *Story*, 181; *Cox v. Cox*, 5 *Rich. Eq. R.* 365.

But the plaintiff is not here seeking strictly to enforce a trust, and I refer to this doctrine of trusts only for the purpose of showing that the land in equity and good conscience still belonged to the plaintiff, after the execution of the deed; and if so, the money which the defendant afterwards received on the sale of it must also belong to him *ex equo et bono.*

But the plaintiff, to sustain his count for money had and received, and to show that money had come to the hands of the defendant which, of right, belonged to the plaintiff, further offered to show that the London parties, having failed to carry out their written agreement with the defendant, he, the defendant, in August, 1853, without the knowledge or consent of the plaintiff, actually sold these lands to one Henry Weld Fuller, subject to the mortgage from defendant to plaintiff, for the sum of fifteen thousand dollars in cash, which was paid to the defendant; the purchaser undertaking to pay off the plaintiff's mortgage of twenty thousand dollars; thus making the real purchase price thirty - five thousand dollars, of which, putting the transaction upon the ground of an agency on the part of the defendant, the plaintiff had received two thousand, and a mortgage for twenty thousand, leaving a balance due him of thirteen thousand dollars.

This deed to Fuller being properly recorded, the plaintiff was, of course, precluded from disaffirming the sale and recovering the lands, or from enforcing a trust against the grantee, without proving actual notice to the purchaser of defendant's fraud in obtaining the deed. Such notice can not be presumed without proof, and, as there appears to have been no pretence of any such notice, Fuller, so far as the present case is concerned, must be considered a purchaser in good faith without notice.

As the plaintiff, therefore, could not avoid the sale by a bill in chancery, and as his only remedy there, upon the facts offered to be shown, must be confined to the purchase money, he brings his action for money had and received for the balance of the purchase money, thirteen thousand dollars, in the hands of the defendant; thus affirming the deed to Fuller, the defendant's agency in the sale, and his own deed to the defendant. But this no more affirms or admits that the money received for the property belongs to the defendant, than a plaintiff admits the same thing in the ordinary case of waiving a tort and suing for the proceeds of the property wrongfully sold.

The plaintiff, therefore, does not seek to show the fraud of the defendant for the purpose of avoiding any deed : and the cases cited from New York and some other states, to the effect that fraud of this kind can not be shown at law to avoid a deed — a doctrine which I think may well be doubted under our statute (*Comp. L.* §4327; see 2 *Pars. on Cont.* 280)—have no application to the present case.

The plaintiff does not sue upon any parol contract required by the statute to be in writing, nor upon any express contract whatever; but upon one which the law implies from the equities of the whole case; or rather, upon a duty on the part of the defendant, which the law recognizes as springing from the whole transaction. Nor is the action brought to recover back the consideration

paid on a contract rescinded; and the plaintiff is no more bound to tender back what he had received upon his land, than the principal, in an ordinary action against his agent for money received in the course of his agency, would be bound to return to the agent the amount he had already received from him, before he could recover for the balance. The plaintiff sues for a part of the price of his land, fraudulently received by the defendant as his agent. Neither the provisions of the statute relied upon, nor any provision of the statute of frauds, any more conflict with such an action than if it had been brought for the price of goods wrongfully sold.

The statute relied upon, and which requires certain estates and interests in lands, and express trusts relating thereto, to be created or declared by deed, was fully complied with in the present case: — *Van Alstine v. Wimple,* 5 *Cow.* 162. This statute has no reference to an action brought for the price of land, nor does it in any way operate to exclude parol evidence in support of such action, which may still be maintained by such evidence, though the deed acknowledge the receipt of the consideration: it is in this respect but a receipt, and only *prima facie* proof of payment of the consideration: —1 *Phil. Ev. by Cowen, Hill & Edwards,* 477, *n.* 131, *and cases cited.* The legal effect of the deed as a conveyance, which is its real purpose, is not altered by parol proof in such cases; nor is it any more altered or affected by the like proof in the case before us.

We must consider this case, upon the evidence offered by the plaintiff, as falling substantially within the ordinary rules applicable to actions brought by a principal against his agent for money received by him on the sale of his principal's property. To hold otherwise would be to sanction the doctrine that an agent may, at any time, get rid of his obligations to his principal by his own fraud, and that he may set up this fraud in bar of his principal's right to the proceeds of his own property.

But it is objected that the plaintiff's remedy is in equity, and that this is an attempt to convert the action of assumpsit into a bill in equity. We do not mean to say that the plaintiff could not have sustained a bill in equity upon the facts of this case. A court of equity might sustain such a bill for the purchase money, as founded upon the notion of a trust; and the plaintiff might be entitled to a discovery. In respect to the discovery, such a bill might, perhaps, in some cases of the kind, be a more advantageous remedy. But if, for want of such discovery, this action is less advantageous to the plaintiff, that can be no ground of complaint on the part of the defendant. The plaintiff may waive his right to discovery, and take upon himself the risk of being able to prove his case without it.

We understand the law to be well settled, that the action of assumpsit for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and if it appear, from the whole case, that the defendant has in his hands money which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover. And that, as a general rule, where money has been received by a defendant under any state of facts which would, in a court of equity, entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action. We do not mean to say there are no exceptions to this rule, standing upon some rule of policy or strict law, in peculiar cases; such as money wrongfully recovered upon a judgment which remains unreversed (as in the case of *Moses v. Macpherlan*, 2 *Burr.* 1005), or where there is a special agreement still open and unperformed. But we are aware of no such exception applicable to a case like the present: nor can we discover any plausible reason why it is

not just as competent to inquire into such a fraud, in a case like the present, in a court of law as in a court of equity. The view we have taken of the nature of this action for money had and received has, we think, been the well settled legal view of the action, at least since the case of *Scott v. Surman, Willes,* 404, 405, (in the year 1742) long previous to the case of *Moses v. Macpherlan.* The opinion of Lord Mansfield in the latter case, as to the general nature of the action, has not, that we are aware, ever been overruled by any respectable authority; though it has been overruled as applied to some of the facts of that case.

That such is still held to be the equitable nature of this action, might be shown by a very long list of authorities both in England and in this country; but we cite only the following as illustrating what may be considered an almost unbroken series of judicial decisions:—*Abbotts v. Barry,* 2 *B. & B.* 369; *Hill v. Perrott,* 3 *Taunt.* 274; *Kelley v. Solari,* 9 *M. & W.* 54; *Wiseman v. Lyman,* 7 *Mass;* 288, 289, (where the nature of the action is very fully explained) *Hess v. Fox,* 10 *Wend.* 436; *Eddy v. Smith,* 13 *Wend.* 488; *Mowatt v. Wright,* 1 *Wend.* 360 (which like *Hess v. Fox,* confirms *Moses v. Macpherlan* as to the equitable nature of the action); *Weeks v. Hunt,* 13 *Vt.* 144; *Scott v. Williamson,* 11 *Shep.* 343; *Beardslee v. Horton,* 3 *Mich.* 560.

That this action lies, and all these equitable considerations apply, as well where the money has been obtained by fraud as by other means, see *Litt v. Martindale,* 36 *E. L. & Eq.* 424, and *Abbotts v. Barry,* above cited: and even where money has been received, as here, by the fraudulent procurement of a deed, which is affirmed by the action:—*Bliss v. Thompson,* 4 *Mass.* 488; and see *Fenemore v. United States,* 3 *Dall.* 357.

And the same equitable considerations apply to any defense set up in this action:—*Eddy v. Smith, ut supra.*

In *Wright v. Butler,* 6 *Wend.* 284, it is expressly held

that "actions of assumpsit on the money counts are re-
sorted to as a substitute for bills in chancery, and are
encouraged wherever the law affords no other remedy, and
where a court of equity would compel a defendant to
repay the plaintiff a sum of money which the latter had
been compelled to pay for his benefit." Substantially the
same view as to the count for money had and received
was held in *Scott v. Surman, Willes,* 404, and by the Su-
preme Court of Massachusetts in *Peabody v. Tarbell,* 2 *Cush.*
226; and see *Gangwer v. Fry,* 17 *Pa. St. R.* 491.

We think all the evidence offered by the plaintiff was
clearly admissible. The judgment of the Circuit Court must
therefore be reversed, and a new trial granted.

MARTIN CH. J., and MANNING J., concurred.

CAMPBELL J., did not sit, having been counsel for one of
the parties.