EDWARD FREEMAN *versus* HENRY F. CURTIS.
MIRIAM SWETT *versus* SAME.

The general rule in equity is the same as in actions at law, that money paid or other property conveyed under a mistake of law, with a full knowledge of all the facts, cannot be recovered back.

But when one person induces another, without any consideration, to convey real estate to him, under their mistake of fact arising from their ignorance of the law, and the property cannot in good conscience be retained, a reconveyance will be decreed upon a bill in equity therefor.

*Thus :* — The defendant, having no legal interest in an estate, represented to the plaintiffs, who were the only heirs of the decedent, that some persons

Freeman *v.* Curtis.

had informed him that certain others were joint heirs with them, while other persons had informed him, that they, the plaintiffs, were the only heirs ; that the others, claiming to be heirs, had conveyed to him their several interests therein, to enable him to contest a will by which a portion of the property had been devised to strangers, he giving them back an agreement to pay them their several shares of one-twelfth each, of the proceeds thereof; and the plaintiffs thereupon, being ignorant of the law regulating the descent and distribution of estates, and consequently being mistaken as to who were the heirs of said decedent, conveyed their interest in the estate, without any consideration, receiving an agreement to pay them one-twelfth each of the proceeds thereof : — Upon these facts, *it was held*, that, if the defendant knew that the plaintiffs were the only heirs, and that they were ignorant of that fact, he obtained the property from them fraudulently; if neither of the parties knew who were the legal heirs, no consideration having been paid for the property, the defendant ought not, in good conscience, to retain it ; and the plaintiffs were entitled to a decree for a reconveyance.

BILLS IN EQUITY. These cases were heard on bills and answers. Written arguments were furnished by

*P. Eastman & Son*, and by *T. M. Hayes*, for the complainants, and by

*Bourne, Sen'r*, for the respondent.

The substance of the allegations in the bills and of the answers of the defendant thereto, appears from the opinion of the Court, which was drawn up by

DAVIS, J.—As these cases are in all respects alike, we may refer to them as one.

They are each presented to the Court upon the bill and answer. The answer is therefore to be considered as true ; and no part of the bill is to be considered true which is denied by the answer. Applying this rule, we gather the following statement of facts :—

Hannah O. Curtis, of Wells, died January 29, 1861. Although she left a will, the validity of which is denied in the answer, the principal controversy relates to a large portion of her property not disposed of thereby. This descended to her heirs at law. As she left no lineal descendants, nor any husband, nor father, nor mother, nor brother, nor sister, the plaintiffs, being an uncle and an aunt, a brother and sister of her mother, are her heirs.

There are also several cousins of the deceased, who are the descendants, *in another line*, of her grandfather, Samuel Curtis. One of these is the defendant. It is not claimed that they are her heirs.

After the death of Hannah O. Curtis, the defendant at once began to interpose in the settlement of the estate, as if he had been one of the heirs. He went to the plaintiffs and "*informed* them that Hannah O. Curtis was dead." As they lived in York, and she died in Biddeford, they probably did not know it until so informed. He also informed them that she left a will, signed, as he believed, "when she was of unsound mind."

He also admits that he represented to them, that the deceased left estate not disposed of by the will; that he had been informed by some that it would descend and be distributed equally to her cousins, — by some that it would belong to the cousins who were the descendants of Samuel Curtis, — and by others, that the uncles and aunts would be entitled to the whole ; that the descendants of Samuel Curtis ought in justice to receive one half of the estate ; "that the defendant was willing to make that distribution if the plaintiffs were ;" and that they consented thereto.

He also exhibited to them several deeds, given by Joseph Curtis and others, to him, "of all their interest in said estate," he giving back to them an agreement to pay them a specified portion of the amount he should realize out of it. Thereupon they assented to his proposition, gave him deeds of all their interest in the estate, and he gave to them an agreement to pay them each one-twelfth part of the amount realized from it.

They now claim that their deeds were obtained by the fraudulent or improper conduct of Curtis, the defendant, and were given under a mistake in regard to their rights. They therefore pray that he may be compelled to reconvey to them.

It is urged, by the counsel for the defendant, that the plaintiffs must have known their relationship to the deceased,

and that, if there was any mistake on their part, it was a mistake of *law*, and not of *fact*. And, it is contended, that against such a mistake equity will afford no relief. 1 Story's Equity, §§ 111, 113.

The same rule is applicable in equity, as in actions at law to recover back money paid, which is an equitable action. And whenever *money* can be recovered back *at law*, on the ground that it has been paid by mistake, *other property* may be recovered back at law, or *in equity*. *Moore* v. *Mandlebaum*, 8 Mich., 433.

The general rule is the same at law as in equity, that, in the absence of fraud, money paid under a mistake or through ignorance of *the law*, with the knowledge of all the *facts*, cannot be recovered back. *Norton* v. *Marden*, 15 Maine, 45 ; *Peterborough* v. *Lancaster*, 14 N. H., 382 ; *Elliott* v. *Swartwout*, 10 Pet., 137. But this was said, by MORTON, J., in *Haven* v. *Foster*, 9 Pick., 112, to be a vexed question. The rule is at least subject to some exceptions. And it has been held in many cases, that, though there has been no actual fraud, if there has been any *improper conduct* on the part of the payee, or, if he ought not in good conscience to retain it, money paid to him under a mistake of the law may be recovered back. *Silliman* v. *Wing*, 7 Hill, 159 ; *Northrup* v. *Graves*, 19 Conn., 548 ; *Renard* v. *Feidler*, 3 Duer, 318 ; *Covington* v. *Powell*, 2 Met., (Ky.,) 226 ; *Culbreth* v. *Culbreth*, 7 Geo., 64.

The rule is quite as stringent in equity, as in suits at law. If relief is ever granted for a mistake of law, it is an exception, depending upon the particular circumstances of the case. *Hunt* v. *Rousmanier*, 1 Pet., 1, 15. And yet the rule is not imperative. " A mistake of law is not *ordinarily* a ground of relief in equity." *Mellish* v. *Robertson*, 25 Vt., 603. But it has never been decided " that a plain and acknowledged mistake in law is beyond the reach of equity." MARSHALL, C. J., in *Hunt* v. *Rousmanier*, 8 Wheat., 174.

It is very clear from the answer of the defendant, as well as from the bill, that the plaintiffs were ignorant of the law

relating to the descent and distribution of estates; and this ignorance of the law involved them in a mistake of *fact*, as to who were the heirs of Hannah O. Curtis. And where the mistake is one both of law and fact, though the latter is the result of the former, relief will be granted, when justice and equity require it. *King* v. *Doolittle*, 1 Head, (Tenn,) 77.

If the defendant was as ignorant as the plaintiffs, the mistake was mutual. If he was not ignorant, then he knowingly took advantage of their ignorance, and obtained the deeds fraudulently.

He alleges that his father, "Ralph Curtis, *in his lifetime*, informed him that the estate of Hannah O. Curtis would descend and be distributed among all the cousins;" and that "he fully believed that such was the law of the State." But what information he received, or what he believed, *in his father's lifetime*, is immaterial. His belief and information, *at the time when he obtained the deeds of the plaintiffs*, are the matters of importance.

He alleges the truth of what he said to the plaintiffs,— that he had been informed by some persons that the estate would descend to the cousins; and, by others, that it would descend to the uncles and aunts. But the answer does not disclose *when* he was so informed. It may have been many years before the death of Hannah O. Curtis that some persons, ignorant of the law, had informed him that the cousins would inherit her estate; while there is nothing in his answer inconsistent with the supposition that he had *recently* been informed, by persons learned in the law, consulted by him as counsel, that the plaintiffs were the only heirs. It would have been the most natural course for him to pursue, to consult counsel; and, as he does not allege his ignorance *at that time*, we are hardly at liberty to infer it.

It is difficult to understand upon what ground the defendant could have supposed it proper for him to intermeddle with the estate. We cannot avoid the impression that he knew, when he procured the deeds of the plaintiffs, that he had no legal interest in it. But, if otherwise, in the most

Freeman *v.* Curtis.

favorable view for him, it was *doubtful* whether he had any interest. Under such circumstances, why did *he* undertake to settle the estate? Or why did he proceed on the assumption that *he had* a legal interest in it? As a prudent man, regarding the rights of others, as well as his own, he would have consulted counsel before doing anything.

Having procured deeds from others, whose interest was as doubtful as his own, he approached the plaintiffs. His representations to them were adapted to give them the impression that their interest was as uncertain, at least, as his. The exhibition of his deeds from other persons, and the suggestion that the object of conveying all their interests to one, was, the better " to contest the will," produced the effect which must have been designed. The plaintiffs, without the slightest consideration, conveyed to him the whole estate, receiving nothing in return but an agreement to pay them each one-twelfth part of the proceeds. The means resorted to, in order to obtain the property, were obviously improper ; and the defendant ought not in good conscience to retain it. It is not a case where one, through ignorance of the law, has settled a claim against him that could not have been enforced ; or has entered into a contract for which he has received any consideration. There was nothing between the parties as a basis for any negotiations. There was no claim of the one against the other, valid, or invalid. It was an isolated act of obtaining a release of five-sixths of a valuable estate, without any pretence of any consideration, through the ignorance of the parties giving it. Whether the defendant was also ignorant, or not, it would be a reproach to the law if he could now be permitted to retain the fruits of such a proceeding.

The bills are sustained, with costs for each of the plaintiffs. A decree will be made in each case that the defendant reconvey all the estate conveyed to him. And, if any further relief is necessary, it will be granted.

APPLETON, C. J., RICE, CUTTING, KENT and WALTON, JJ., concurred.